UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC, RONALD STRAIT, and
DANNY O. STEVENS, for themselves and
others similarly situated,                                    Case No. 11-15497

          Plaintiffs,                                          Honorable Nancy G. Edmunds

v.

KELSEY-HAYES COMPANY, TRW
AUTOMOTIVE, INC., and TRW
AUTOMOTIVE HOLDINGS CORP.,

          Defendants.

_____/


**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION**


    This matter comes before the Court on Defendants Kelsey-Hayes Company, TRW

Automotive, Inc., and TRW Automotive Holdings Corp.'s motion to compel arbitration.  For

the reasons set forth below, Defendants' motion is DENIED.

**I.      Facts**

    **A.     The Collective Bargaining Agreements**

    Plaintiffs United Steelworkers of America, AFL-CIO-CLC, Ronald Strait, and Danny

O. Stevens, for themselves and others similarly situated,[1] and Defendants entered into a

_____

    [1] Plaintiffs label their Complaint as a "Class Action," refer to the "proposed class"
throughout the Complaint, and argue that the plaintiffs should be treated as a class.  In

series of collective bargaining agreements (CBAs).  (Compl. ¶ 10.)  The CBAs promise eligible retirees and former Union-represented Jackson plant employees lifetime Company-paid retirement healthcare at the levels and terms in effect during the effective dates of those CBAs and at the time of the closing of the Jackson plant.  (*Id.*)  The February 10, 2003 CBA was in effect at the time the Jackson plant closed in 2006 (2003 CBA) and it states that the healthcare that retiring employees had "at the time of retirement . . . shall be continued thereafter" and that Defendants "shall contribute the full premium" for retirees, their eligible family members, and surviving spouses.  (2003 CBA, Art. XVII.)

The 2003 CBA also states, "No matter, respecting the provisions of the Pension Plan or the Insurance Program . . . shall be subject to the grievance procedure established in this Agreement."  (2003 CBA, Art. XVII.)  The Insurance Program states, "No matter respecting the Program . . . or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between [Defendants] and [Plaintiffs]."  (2003 CBA, Supp. C, Sec. 9.)  The previous CBAs, executed in 1995 and 1999 contain identical language.  The CBAs grievance procedures state that an arbitrator "shall have the right to arbitrate grievances, except the Pension Plan, [and the] Insurance Program."  (2003 CBA, Art. V, Sec. 3(d); 1999 CBA, Art. V, Sec. 3(d); 1995 CBA, Art V, Sec. 3(d).)

## B.    The Plant Shutdown Agreement

---

their request for relief, Plaintiffs request that this Court "certify this action as a class action, appoint plaintiffs Strait and Stevens as class representatives, and appoint plaintiffs' counsel Legghio & Israel, P.C. as class counsel."  Plaintiffs have not, however, filed a motion to certify the class, the issue has not been briefed, and this Court has not ruled on the matter.

On September 30, 2005, Plaintiffs and Defendants entered into the Plant Shutdown Agreement ("PSA"), a negotiated agreement regarding terminating operations at the Jackson facility. The PSA mandated that "any alleged violation of the Collective Bargaining Agreement, and or this Plant Shutdown Agreement, will be subject to final and binding arbitration in accordance with the Grievance Procedure set forth in Article V of the Collective Bargaining Agreement." (PSA ¶ 17.) It further states, "If any provision of the Collective Bargaining Agreement is inconsistent with any provision of the Plant Shutdown Agreement, the provisions of the Plant Shutdown Agreement shall govern." (PSA ¶ 15.)

### C.    Plantiffs' Claims

On December 15, 2011, Plaintiff filed a Complaint against Defendants. Plaintiffs allege that Defendants have breached their obligation under the CBAs to provide the individual plaintiffs and proposed class members with lifetime retiree benefits. Plaintiffs allege that on January 1, 2012, Defendants unilaterally discontinued the TRW Retirement Healthcare Plan and substituted individual retirement healthcare accounts in its place. (Compl. ¶¶ 12-14.)

## II.    Standard

In the context of a labor dispute, the Sixth Circuit has stated that "we begin with a presumption that national labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). The issue of arbitrability within the context of a labor dispute is guided by the four principles of *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986); namely:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and

3

unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is a question for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Int'l Union v. Cummins, Inc.,* 434 F.3d 478, 485 (6th Cir. 2006).

When there is a general or broad arbitration clause, "the presumption of arbitrability [is] 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Teamsters Local Union No. 89 v. Kroger Co.,* 617 F.3d 899, 905 (6th Cir. 2010) (internal citation omitted).   The presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits and if there is nothing in the agreements that specifically excludes the dispute from arbitration. *Cleveland Elec. Illuminating Co. v. Util. Workers Union, Local 270*, 440 F.3d 809, 816 (6th Cir. 2006).

Finally, "when the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration.   Arbitration may not be denied unless the party contesting arbitrability can establish with positive assurance that the arbitration clause cannot be interpreted so as to cover the dispute at issue."   *Int'l Bhd. of Elec. Workers v. AT&T Network Sys.*, 879 F.2d 864 (6th Cir.1989) (internal citation omitted).

### III.   Analysis

Defendants argue that Plaintiffs' claims are improperly before this Court because

4

Plaintiffs obligated themselves by contract to submit to arbitration in the PSA.  Defendants argue that the PSA contains a broad arbitration clause, covering any alleged violation of the CBA or PSA and that the PSA does not contain an "express provision" that would exclude the issue of retiree healthcare from arbitration.  Defendants specifically state in their motion that "plaintiffs claims are subject to mandatory arbitration unless they can point to an express provision excluding a particular grievance from arbitration."  Here, Plaintiffs have done exactly that.

The arbitration provision of the PSA states "any alleged violation of the Collective Bargaining Agreement, and or this Plant Shutdown Agreement, will be subject to final and binding arbitration in accordance with the Grievance Procedure set forth in Article V of the Collective Bargaining Agreement."  The Grievance Procedure in Article V of the CBA specifically states that the arbitrator "shall have the right to arbitrate grievances, except the Pension Plan, [and the] Insurance Program."

Plaintiffs' argue that the PSA should be read according to its plain language, which explicitly states that alleged violations are subject to arbitration in accordance with a procedure that has explicitly excluded the Pension Plan and Insurance Program. Defendants argue that this has the impermissible effect of making the mandatory arbitration provision in the PSA superfluous and, in effect, makes "any violation of the CBA or PSA handled strictly pursuant to Article V of the CBA."

But the language of the PSA explicitly states that any violation is subject to arbitration *in accordance with the Grievance Procedure in Article V of the Collective Bargaining Agreement.*  Defendant may not like the results of the plain language of the PSA, but the language itself is clear and unambiguous.  This Court agrees with Defendants

5

that the presumption of arbitrability applies to disputes over retirees' contracted-for benefits. That presumption does not apply, however, where there is something in the agreements that specifically excludes the dispute from arbitration.  In this case, the arbitration clause specifically refers to a provision that excludes the dispute from arbitration.

Defendants rely on three cases with similar facts to the ones in this case as support for their position that Plaintiffs should be compelled to go to arbitration.  This Court will examine those cases in turn.

In *Burcicki v. Newcor, Inc.*, the district court ruled that Plaintiffs' claims were subject to arbitration, pursuant to the dispute resolution provision of the agreement between the union and employer in that case.  *Burcicki v. Newcor, Inc.*, No. 02-cv-70230-DT, 2010 U.S. Dist. LEXIS 27353 (E.D. Mich. March 23, 2010) (Rosen, J.).  The *Burcicki* Dispute Resolution provision stated:

> *All disputes or claims* arising out of any alleged violation of the CBA, its modifications as contained herein, and this Termination Agreement *will be resolved by arbitration in accordance with the voluntary arbitration rules of the American Arbitration Association*. The decisions of the arbitrator shall be final and binding.  Expenses of the arbitrator shall be shared equally. Any dispute or claim hereunder must be submitted to arbitration within thirty (30) calendar days of either parties' written, final answer to the dispute raised by the other party, or it shall be waived.

*Burcicki*, 2010 U.S. Dist. LEXIS 27353, at *27 (emphasis added).

The arbitration provision in the PSA in this case is readily distinguishable from the arbitration provision in *Burcicki*.  Unlike this case, *Burcicki's* arbitration clause is not subject to a provision of another agreement that explicitly exempts pension and insurance disputes. The *Burcicki* language explicitly mandates that all disputes or claims will be resolved by arbitration *in accordance with the voluntary arbitration rules of the American Arbitration*

6

*Association*.  If that were the language in the PSA in this case, Plaintiffs' claims would be subject to arbitration.  The arbitration provision in this case, however, is subject to the grievance procedure in the CBA.

Defendant also relies on *UAW v. Kelsey-Hayes Co.,* currently pending in another court in the Eastern District of Michigan.  *UAW v. Kelsey-Hayes Co.*, No. 11-14434 (Cook, J.).  In an order issued on January 5, 2012, the court in *UAW* found that the plaintiffs' claims were subject to arbitration.  *Id.* at Doc. 41.  In that case, however, the broad arbitration clause of *UAW's* Termination Agreement states:

> *In the event the Union shall have any dispute or disagreement* concerning the interpretation and application of this Agreement, the sole and exclusive recourse of the Union is to submit any dispute or disagreement in writing to the Company within thirty (30) days after the Union shall reasonably have become aware of the existence of any such dispute or disagreement. Within ten (10) days of receipt of the written document, the Company and the Union shall meet to attempt to resolve the matter.  Should the meeting fall to resolve the matter, *arbitration shall be conducted in accordance with the labor arbitration rules of the American Arbitration Association.* The cost of the arbitrator's fee shall be borne equally by each side. The arbitrator cannot add to, subtract from, or modify the terms of this Agreement. The decision of the arbitrator shall be final and binding and enforceable in any court of competent jurisdiction or appealable in accordance with the applicable standards of federal law.

*UAW*, Doc. 14, ¶ 20 (emphasis added).

That arbitration clause, unlike the one in this case and similar to *Burcicki*, is not subject to any provision in another agreement between the parties.  In fact, earlier in *UAW's* Termination Agreement, it states that the collective bargaining agreement between the parties "shall be deemed to have terminated . . . without further liability under the [CBA] except for the specific obligations expressly set forth in this Agreement."  *UAW*, Doc. 14-3, ¶ 2.

Like *Burcicki*, then, *UAW* can be readily distinguished from this case because the arbitration clauses in those cases are not subject to another agreement between the parties that explicitly limits the disputes that are subject to arbitration.

Finally, Defendant relies on *Audia v. Newcor, Inc.*, where the same court that decided *Burcicki* ruled that there was no basis in the plaintiffs' submissions to depart from or distinguish its ruling in *Burcicki* from the case at hand.  *Audia v. Newcor, Inc.*, No. 10-10209, 2010 U.S. Dist. LEXIS 74604 (E.D. Mich. July 23, 2010) (Rosen, J.).   The agreement containing the arbitration clause in *Audia* states:

> The Union and Company agree that neither will commence any action or proceeding in any court or before any tribunal concerning alleged rights which arise from the sale of the Company unless such disputes concern interpretation, application of specific terms contained[] herein, or performance of the specific terms of this agreement. *Should any such legitimate disputes occur, they shall be resolved using the Arbitration procedure outlined in Paragraph 8 of the [1993 CBA]*.

*Audia*, 2010 U.S. Dist. LEXIS 74604, at *12 (emphasis added).

At first glance, this arbitration provision seems to unequivocally mandate arbitration for all grievances, just as the arbitration provision in *Burcicki* did.  *Audia's* arbitration provision, however, like the arbitration provision in this case, indicates that the disputes shall be resolved using the arbitration procedure outlined in the CBA.  Paragraph 8 of the CBA in *Audia* states, in relevant part, "The Arbitrator shall not be empowered to rule upon any issue arising under the Retirement Income Plan or the Supplemental Unemployment Benefit Plan." (*Audia* 2003 CBA, Sec. IV(8)(C)(4).)[2]

---

[2] Paragraph 8 as a whole, reads:
> 8. A. If the Company's decision is not acceptable to the Union, the Union may request the grievance be submitted to binding arbitration within five working days after receipt of the Company's decision.

The arbitration provision in *Audia*, then, like the one in this case, is subject to a provision in the CBA that explicitly exempts certain disputes from the arbitration procedure. Acknowledging that differences in the arbitration provisions could distinguish the cases from one another, the *Audia* court stated:

> [t]his case might potentially be distinguishable from *Burcicki* on the ground that the arbitration provision here, unlike the one in *Burcicki*, might not call for arbitration of the particular dispute being pursued by Plaintiffs. Notably, however, Plaintiffs have not advanced such an argument, nor do they even attempt to identify any material difference between the language of the MOA in this case and the Termination Agreement in *Burcicki* that might warrant different outcomes in the two cases. Rather, Plaintiffs evidently have elected to forgo any effort to distinguish *Burcicki* on this ground.

*Audia*, 2010 U.S. Dist. LEXIS 74604, at *11.

The court continued, "In any event, left to its own devices, the Court cannot say that the arbitration provisions in this case and in *Burcicki* are sufficiently distinguishable to dictate a different result here." *Id.* There is no indication, however, that the court in *Audia* examined paragraph 8 of the 1993 CBA, to which the arbitration provision referred, instead relying solely on the similar language of arbitration clauses.

Having examined the provision of the CBA to which *Audia's* arbitration provision is subject, this Court disagrees that the *Audia* and *Burcicki* arbitration provisions are

---

B. The Arbitrator shall be selected in accordance with the rules of the American Arbitration Association. The expenses of the Arbitrator shall be shared equally by both parties.
C. The Arbitrator shall not be empowered to:
    1. add to or subtract from, to disregard or to modify any of the terms of this Agreement;
    2. hear or determine any issue involving wage rates or rates for new classifications;
    3. hear or determine any issue involving health and safety;
    4. rule upon any issue arising under the Retirement Income Plan or the Supplemental Unemployment Benefit Plan.

9

indistinguishable.   Had the plaintiffs in *Audia* argued that its arbitration provision was distinguishable from the one in *Burcicki*, this Court believes the *Audia* court would have examined the language of the CBA and found that the arbitration provision in *Audia* excluded grievances pertaining to the Retirement Income Plan or the Supplemental Unemployment Benefit Plan, as specifically excluded in paragraph 8 of the 1993 CBA. Instead, the Court agreed with the defendants, "finding no basis *in Plaintiffs' submissions* to depart from or distinguish its ruling from *Burcicki*." *Id.* at *10-11 (emphasis added).

As stated above, in this case, the PSA's arbitration clause specifically states that alleged violations are subject to arbitration in accordance with the grievance procedure in the CBA, which specifically exempts the pension plan and insurance program.  If the parties intended for the PSA to mandate arbitration for alleged violations of the pension plan and insurance program, this could have been done, as it was in *Burcicki* and *UAW*.  For the reasons stated above, however, this Court cannot find that Plaintiffs intended to obligate themselves by contract to submit to arbitration grievances pertaining to the Pension Plan or Insurance Program.

Although this Court finds that Plaintiffs did not obligate themselves in the PSA to submit its pension and insurance grievances to arbitration, it is worth noting that even if the PSA did mandate arbitration for those grievances, it would not be binding on those who retired before September 30, 2005, when the PSA became effective.

Courts have consistently held that the retirement healthcare and pension rights under a CBA are considered to be vested at the time of retirement.  See, e.g., *Cole v. ArvinMeritor, Inc.*, 516 F. Supp. 2d 850, 867, 869 (E.D. Mich. 2005); *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996).  An employer may not unilaterally diminish or

10

restrict such vested rights. *Allied Chem. Workers v. PPG Co.*, 404 U.S. 157, 182 n.20 (1971) ("[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent"); *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006) (citation omitted) (once healthcare benefits vest, "the employer's unilateral modification or reduction of those benefits constitutes a LMRA violation"); *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1482, n.8 (6th Cir. 1983) (the union and the employer "may not…bargain away retiree benefits which have already vested"). Subsequent agreements between the union and the employer cannot lawfully to amend or terminate the benefits that are already vested to the retirees. *Bender v. Newell Window Furnishings, Inc.*, 725 F. Supp. 2d 642, 660 (W.D. Mich. 2010).

In this case, then, those employees who retired before the 2005 PSA became effective, are not subject to any terms in the agreement that diminish their already vested rights. The rights of those employees who retired before the 2005 PSA became effective are determined by the language of the CBA, which specifically excludes insurance and pension disputes from arbitration.

This Court finds that the PSA did not alter the exclusion from arbitrability of those disputes, but even if it did, the PSA could not diminish the vested rights of those employees who retired before its implementation. Moreover, Plaintiffs have presented evidence that over 88% of the plaintiffs in this case retired before September 30, 2005, when the PSA took effect, indicating that the vast majority of the plaintiffs are not subject to any limitation or alteration of benefits that the PSA caused.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration is DENIED.

11

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  May 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on May 30, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager